

FILED

MAR 29 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   ID-15-1065-KiFJu |
| JAY P. CLARK, | Adv. No.   13-06042-TLM |
| Debtor. | Bk. No.   12-00649-TLM |
| JAY P. CLARK, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| JEREMY J. GUGINO, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on March 17, 2016,
at Pasadena, California

Filed - March 29, 2016

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Terry L. Myers, Chief Bankruptcy Judge, Presiding

Appearances:     Appellant Jay P. Clark argued pro se; Matthew Todd Christensen of Angstman Johnson & Associates, PLLC argued for appellee Jeremy J. Gugino, Chapter 7 Trustee.

Before: KIRSCHER, FARIS and JURY, Bankruptcy Judges.

---

[1]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, it has no precedential value.  See 9th Cir. BAP Rule 8024-1.

Appellant, chapter 7[2] debtor Jay P. Clark, appeals the bankruptcy court's judgment denying his discharge under § 727(a)(2)(B), (a)(3), (a)(4)(A) and (a)(6)(A). We AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.   Prepetition events**

Debtor has been in the farming business with his family in Idaho for a number of years. In February 2008, he formed the entity Clark's Crystal Springs Ranch, LLC (the "LLC") for his farming operation. The LLC is owned by the Clark Farm Family Trust, also created in 2008 by Debtor, which names Debtors' two children as beneficiaries. Debtor has no ownership interest in the LLC. Until May 31, 2013, Debtor was the manager of the LLC and trustee of the Trust. After that, Robert Jones took over those roles, followed by Debtor's sister, Judith Appleby.

In 2010, Debtor entered into a written lease agreement with the Hilliards (who were former clients in Debtor's former law practice) to farm 4000 acres of the Hilliards' land known as Crystal Springs Farm. Thereafter, the Hilliards sold the Farm to Murphy Land and gave notice to Debtor that the lease was terminated, demanding that Debtor quit and vacate the property. When Debtor failed to vacate, both Murphy Land and the Hilliards filed separate civil actions, seeking to evict Debtor from the property and have the lease voided and expunged from county records ("Lease Litigation"). Debtor contended he had an interest in the wheat and alfalfa crops growing on the Farm and a right to

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

be paid for the labor expended to produce them.

Murphy Land and the Hilliards prevailed in their respective lawsuits on summary judgment in March 2012. In the Hilliard case, the state court found that Debtor had breached his fiduciary duty to the Hilliards as his clients and, based on that breach, ruled that the 2010 written lease agreement was void ab initio. Based on the findings in the Hilliard case, the state court determined in the Murphy Land case that Debtor had no possessory right or interest in the Farm and awarded immediate possession to Murphy Land. Debtor appealed the Murphy Land decision but not the Hilliard decision.

**B.    Postpetition events**

**1.    Events leading to the § 727 action**

Faced with eviction from the Farm, Debtor[3] filed a skeletal chapter 12 bankruptcy petition on March 27, 2012. Forrest Hymas was appointed as chapter 12 trustee. The case was assigned to Judge Pappas.

On April 4, 2012, even though facing imminent eviction from the Farm, Debtor (and/or the LLC) entered into a contract with DeVries Family Farm to sell DeVries 1500 tons of alfalfa hay still growing on the Farm for $270,000. DeVries paid Debtor $135,000 as a down payment, which Debtor deposited in the LLC's bank account. DeVries was not aware of the Lease Litigation, the avoidance of the Hilliard lease or of Debtor's pending eviction.

On April 12, 2012, Murphy Land was granted relief from the

---

[3] Debtor's petition was filed as "Jay P. Clark DBA Crystal Springs Ranch," which apparently caused confusion as to whether he was claiming LLC assets as his own.

-3-

automatic stay to continue with its eviction proceeding against Debtor.

On April 18, 2012, Debtor sent a letter to DeVries, notifying them of the bankruptcy and of an upcoming hearing in the Lease Litigation on April 23 that could potentially affect Debtor's possession of the hay crop DeVries had already purchased. Debtor opined that the hay crop was the most valuable asset of **his** bankruptcy estate at $1.5 million. Debtor requested that DeVries help in his efforts to remain on the Farm so that he could harvest the profitable crop within the next two weeks.

On May 3, 2012, Debtor filed his initial schedules, statement of financial affairs ("SOFA") and declarations verifying under penalty of perjury that they were true and correct to the best of his knowledge, information and belief. The documents were prepared and filed by his then bankruptcy attorney, Brent Robinson.

The initial schedules contained several assets which belonged to the LLC. Debtor testified that Robinson felt it prudent to include LLC assets because there was so much overlap in his property and the LLC property and also in the LLC debts and his debts, based on his guarantees. For example, in his Schedule B, Debtor listed several checking accounts belonging to the LLC. At the same time, Debtor claimed he had no ownership interest in the LLC, asserting it was owned by the Trust. Schedule B also disclosed that Debtor owned approximately $1,284,000 in crops. Debtor admitted at trial that this disclosure was not accurate and that the crops were actually an asset of the LLC. However, Debtor testified that he listed the crops because he hoped to pay all

-4-

lien creditors with the crop proceeds he anticipated receiving.

Debtor disclosed seven motor vehicles, including a 1995 Chevy truck, a 2007 GMC truck and a 2001 "Nort PM" camper. Debtor also disclosed receivables owed to him by Owyhee Farming Company, Dan Carter and Lance Funk, collectively worth $326,000. However, the contract with Owyhee Farming Company/Lance Funk indicates that the receivable was an asset of the LLC. A later amendment reflected this fact.

Debtor's initial SOFA disclosed that he received no income in the three months before filing, but he earned $2.4 million in 2011 and approximately $1.3 million in 2010. This income was actually the putative gross income of the LLC. Debtor's actual income drawn from the LLC was reflected in a QuickBooks account of the LLC (labeled "Jay's Income: owner draws"), which was maintained by Debtor's former bookkeeper, Jennifer Epis. In SOFA question 14, Debtor indicated he was holding or in control of farm equipment owned by either the LLC or his parents, valued at $1 million. Debtor stated at trial that errors existed in the itemized farm equipment list attached to his SOFA because that list was created in 2007 (five years before his bankruptcy filing) and several items had since been bought and sold.

In May and June 2012, Debtor, on behalf of himself and the LLC, recorded labor and seed liens against the Farm, asserting that he and/or the LLC had an interest in the crops grown on the Farm ("Lien Claims"). Debtor valued the Lien Claims at approximately $600,000. Litigation ensued between Debtor and Murphy Land over the Lien Claims ("Lien Litigation"). Debtor's initial schedules and SOFA did not disclose any claims or

counterclaims against Murphy Land, though the existence of the Lease Litigation was disclosed in the initial SOFA. None of the original or subsequently amended schedules reflected the existence of the Lien Claims, although Debtor testified that disclosing his interest in "crops" effectively disclosed them. Ultimately, the state court ruled in July 2013 that the crops belonged to Murphy Land, which Debtor claims was the result of a default judgment entered against him because appellee, chapter 7 trustee Jeremy Gugino ("Trustee"), failed to defend.

On March 18, 2013, DeVries moved to convert Debtor's case to chapter 7; the motion was joined by another creditor. After a two-day evidentiary hearing, Judge Pappas granted the motion on May 31, 2013, finding that under § 1208(b), Debtor had committed fraud "in connection with the case" stemming from the hay contract with DeVries. After the conversion to chapter 7, Judge Pappas recused himself from Debtor's case and it was reassigned to Judge Myers. The district court affirmed the conversion order. Debtor has appealed that ruling to the Ninth Circuit Court of Appeals, but no decision has been rendered.

Meanwhile, on May 23, 2013, on the eve of his case being converted to chapter 7, Debtor filed an amended Schedule B and amended SOFA. Debtor added several business entities in which he had an interest in the previous six years. Debtor testified that the impetus for this amendment was creditors' counsel identifying the omission.

On August 7, 2013, Debtor filed amended Schedules B, C, D, E and F and the corresponding verifications. In this amendment: (1) Debtor's list of vehicles no longer included the 2007 GMC

truck, the 2001 camper or the 1995 Chevy truck; (2) Debtor no longer asserted an interest in the Trust, in which he had originally claimed a $150,000 interest; (3) Debtor claimed a one-third interest in the disclosed crops instead of the full value as before; and (4) the farm equipment listed in Schedule B was amended to show the LLC as owner, not Debtor.

At trial, Debtor admitted selling the 2007 GMC truck and a 2011 Arctic Fox camper (that was apparently never disclosed or was confused with the 2001 Nort PM camper) during the chapter 12 case. He sold the 2007 GMC truck in September 2012 in exchange for $12,000 in wheat seed, which benefitted the LLC. A debt to Chase Bank secured by the truck was paid off. The sale of the 2007 GMC truck and satisfaction of the debt were not disclosed to or approved by the court, although Debtor testified that his attorney Robinson told him it was okay to sell it. The 2011 Arctic Fox camper was sold in April 2013 for $22,000, which satisfied the outstanding secured debt and provided $500 to Debtor. This transaction was also not disclosed to or authorized by the court, but Debtor testified that Robinson told him it was a good idea to sell it.

On August 8, 2013, Debtor filed amended Schedules A, B, C and F and the corresponding verifications. These amendments disclosed three assets for the first time. The first was a one-third tenancy-in-common interest in vacant land in Elmore County worth $42,000. The documents regarding this interest included warranty deeds recorded on March 27, 2012, less than two hours prior to Debtor's bankruptcy filing, conveying a one-third interest to Debtor and a two-thirds interest to his parents. Debtor testified

-7-

that his one-third property interest was paid for by his parents. A title commitment in favor of Debtor and his parents for this property was dated three weeks prior to the recording. A settlement statement signed by Debtor was dated March 22, 2013. Debtor testified that the one-third property interest was not listed previously by mistake.

The other two newly-listed assets were a 2008 Chevy truck and a 2008 Arctic Cat ATV, which were titled to both Debtor **or** the LLC.[4] The cause of Debtor's late disclosure of these items was disputed. He contended that just before the first § 341(a) meeting with Trustee, his parents' attorney, Doug Mushlitz, informed Trustee of these vehicles after reviewing 22 titles given to Mushlitz by Debtors' parents. The two titles at issue showed both Debtor and the LLC as owners, whereas the remaining 20 vehicles were titled only in the name of the LLC. Trustee testified that Debtor only disclosed the two omitted vehicles after Trustee discovered their existence.

On August 14, 2013, Debtor filed an amended Schedule A and the corresponding verification. Here, Debtor added two "interests in mineral rights" on parcels of property located in Canyon County, Idaho, which he valued collectively at $1,140. Debtor stated at trial that he had forgotten about these rights because his parents owned the parcels and had always paid the property taxes on them. It is undisputed that this amendment resulted from Trustee's independent investigation.

---

[4] Debtor now also asserted that the 2001 "Nort PM" camper was "sold - traded in" in May 2011 prior to Debtor's bankruptcy filing, so it is unclear why this camper was even disclosed.

-8-

## 2. The § 727 action

Trustee sought to deny Debtor's discharge under § 727(a)(2)(B), (a)(3) and (a)(4). Trustee alleged that both before and after the petition date, Debtor entered into leases of property or sale agreements for property, asserting at times that these agreements were with him personally and at other times asserting that the agreements were with the LLC. Debtor would also routinely receive payments (for sales of property or crops) that were made to him directly and would deposit those payments into the LLC bank account and treat the payments as payments to the LLC. Trustee alleged that Debtor would take "draws" from the LLC, notwithstanding that he was not a member of the LLC entitled to draws. The "draws" were considered Debtor's income from managing the LLC.[5]

In addition to the items discussed above that were either not disclosed or disclosed only after prompting, Trustee alleged that Debtor never disclosed in his SOFA a disciplinary action against him by the Idaho State Bar, which had occurred within the year prior to his bankruptcy filing. While disclosing the $20,000 retainer Debtor paid to Robinson, he never disclosed that the funds were paid by the LLC. Debtor also never disclosed in his Schedule G any alleged oral leases he had with the Hilliards to farm various properties. Finally, Trustee alleged that before and

---

[5] Trustee also sued the LLC and the Trust, seeking a determination that they were invalid at formation, treated as Debtor's alter ego, and that they be substantively consolidated with Debtor's estate ("LLC Action"). See Adv. No. 13-06016-TLM. Prior to issuing its decision on the § 727 action, the bankruptcy court entered a judgment in the LLC Action in favor of Trustee on the substantive consolidation claim. That decision has been appealed to the BAP, case no. 15-1010.

-9-

after the petition date, Debtor had an interest in a $350,000 check paid on account of a crop insurance claim for crops grown in 2013 by Debtor and/or the LLC which was never disclosed. However, Debtor testified that he never claimed an interest in the crop insurance proceeds.

### a. The parties' pretrial briefing

In his pretrial brief, Debtor first contended that the bankruptcy court was divested of jurisdiction over the § 727 action because many of the same matters at issue had already been litigated in the conversion action, which was on appeal to the Ninth Circuit. In addition, Debtor contended that many of the allegations Trustee asserted to support his § 727 claims, namely the issues surrounding the state court litigation with Murphy Land and the Hilliards, had been settled by Trustee in September 2013. Accordingly, Debtor argued that Trustee was precluded from raising issues and claims that were previously compromised.

As for the sales of the 2007 GMC truck and camper, Debtor asserted that the chapter 12 trustee Hymas knew of the sales at the time and never objected. On his alleged concealment of the 2008 Chevy truck and the 2008 ATV, Debtor contended that he timely disclosed his ownership interest in those vehicles and provided titles when requested at one of his five § 341(a) meetings. Respecting the mineral rights and the one-third property interest, Debtor contended that Trustee had no evidence that he intended to conceal those interests for the purpose of hindering, delaying or defrauding creditors. Once Trustee discovered the mineral rights, which Debtor had forgotten about, Debtor's then bankruptcy attorney, Don Gadda, immediately prepared an amended schedule to

correct the error. Further, since they were valued at only $500, Debtor contended that it made no sense that he would try to conceal their existence. As for the one-third property interest, Debtor disputed Trustee's ability to raise that claim since Trustee had settled the matter with Debtor's parents, who had initially purchased and paid for the property. Alternatively, Debtor contended that Trustee had no evidence that Debtor actually intended to conceal that property, which he argued had no equity available for creditors in any event.

Lastly, since many of the same issues in the § 727 action were about to be litigated first in the LLC Action, Debtor asked the bankruptcy court to take judicial notice of any findings it made in the LLC Action as they may relate to Trustee's allegations in the § 727 action, to avoid litigating the same issues twice in two weeks.

### b. The trial

During the two-day trial on the § 727 action, Appleby (Debtor's sister), Debtor and Trustee testified. On request of the parties, the bankruptcy court admitted the testimony of Jones (former trustee of the Trust and LLC Manager), Epis (Debtor's bookkeeper) and Ed Gabriel (Debtor's CPA), given in the LLC Action the week prior.

Before hearing from any witnesses, the bankruptcy court addressed Debtor's jurisdictional argument. The court determined that the appeal of the conversion order did not impede its ability to hear the § 727 action, either as a matter of jurisdiction or otherwise. While some of the same facts in the prior action could be relevant in the § 727 action, the court did not view this as a

-11-

matter where the pendency of the appeal divested jurisdiction or constrained the court in considering whatever evidence the parties planned to present.

Respecting his finances and record keeping, Debtor admitted that some of his personal expenses (student loans, travel, child support payments, medical bills) were paid for by the LLC. However, Debtor explained that while the items Trustee raised might have been paid out of an LLC account, Epis would go through all of those charges and determine which ones were considered personal and which ones were considered business. Epis testified that all of the income and expenses for Debtor and the LLC were run through the same set of QuickBooks for the LLC. However, Debtor's expenses or draws were categorized as personal, apart from business expenses. Epis testified that to her knowledge Debtor properly accounted for all of his income. When questioned about hiding assets, Epis testified that Debtor never attempted to hide income or assets from anyone, including any taxing agencies or his accountants.

Gabriel, Debtor's accountant and tax preparer since at least 2008, testified that because the LLC is a single member LLC, its income flowed through to its member, the Trust, and because Debtor was grantor of the Trust, the Trust's income flowed through to Debtor. Gabriel testified that it was set up that way for simplicity, because only one tax return needed to be filed, which was the personal return for Debtor, and it was typical to use LLCs in a farming operation for liability protection. Gabriel testified that his firm never saw anything in Debtor's financial records that indicated fraud or required reporting. He further

-12-

testified that the tax returns filed for Debtor complied with state and federal law.

Debtor testified that he had no intent to hinder, delay or defraud creditors; "it was the furthest thing from [his] mind." Trial Tr. (Aug. 26, 2014) at 180:25-181:1. He also testified that he never concealed or destroyed property from a creditor or Trustee. Debtor testified that he discovered the "quite sloppy" nature of the original schedules during the conversion hearing in May 2013. Id. at 186:14. Debtor admitted that he should have worked more closely with Robinson's office to ensure the schedules were complete and accurate. Debtor took the blame for any errors, admitting that he is not detail-oriented and that he "screwed up." Id. at 937:13.

Once the parties rested, Trustee orally moved to amend his complaint to include a claim under § 727(a)(6)(A) for Debtor's alleged failure to comply with an injunction entered in the LLC Action on June 24, 2013.[6] The injunction's purpose was to protect the LLC's assets pending that litigation. During the trial, Appleby testified that Debtor was dryland farming in the summer of 2013. Debtor agreed he was doing dryland farming at that time. Debtor further testified that he had been helping his father farm from November 2013 until the spring of 2014, using the LLC's

---

[6] The injunction provided, in pertinent part:

IT IS HEREBY FURTHER ORDERED, that the [LLC] as well as the Trust, as well as any and all agents of the same, are RESTRAINED and PROHIBITED from transferring any of the assets of those entities, including any funds from the bank accounts of the same, absent either express written permission by the Trustee or express Order of this Court.

-13-

equipment. Debtor admitted he had not asked the court's or Trustee's permission prior to using the LLC's equipment to farm his dad's land. Debtor said he understood that only transfers or sales of the equipment were prohibited by the injunction, not use by his dad.

In response to Trustee's oral motion to amend, Debtor stated he did not know that use of the equipment was going to be an allegation against him, and with the close of evidence, he was prejudiced by not being able to present evidence to rebut Trustee's claim. Debtor stated that had he known about this new allegation, he would have had an employee testify to disprove any violation of the injunction. The bankruptcy court agreed to take Trustee's oral motion under advisement with all other matters once post-trial briefs were received.

**c.    The bankruptcy court's ruling on the § 727 action**

After the parties submitted post-trial briefs presenting their closing arguments, the bankruptcy court issued its Memorandum Decision and Judgment. The court granted Trustee's oral motion to amend his complaint to add the § 727(a)(6)(A) claim and determined that Debtor's discharge was denied under § 727(a)(2)(B), (a)(3), (a)(4)(A) and (a)(6)(A).

**II. JURISDICTION**

We conclude, as discussed below, the bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

**III. ISSUES**

1.    Did the bankruptcy court err in denying Debtor's discharge under § 727(a)(2)(B)?

-14-

2.   Did the bankruptcy court err in denying Debtor's discharge under § 727(a)(4)(A)?

3.   Did the bankruptcy court err in denying Debtor's discharge under § 727(a)(3)?

4.   Did the bankruptcy court err in denying Debtor's discharge under § 727(a)(6)(A)?

## IV. STANDARDS OF REVIEW

In an action for denial of discharge, we review:  (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006).

The bankruptcy court's determinations concerning the debtor's intent are factual matters reviewed for clear error. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 729 (9th Cir. BAP 1999). Factual findings are clearly erroneous if they are illogical, implausible or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).  We give great deference to the bankruptcy court's findings when they are based on its determinations as to the credibility of witnesses. Id. (noting that as the trier of fact, the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").  If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-75

-15-

(1985); Ng v. Farmer (In re Ng), 477 B.R. 118, 132 (9th Cir. BAP 2012).

## V. DISCUSSION

**A.   The bankruptcy court had jurisdiction over the § 727 action.**

As a preliminary matter, Debtor contends the bankruptcy court lacked subject matter jurisdiction to determine the § 727 action. Trustee entirely fails to address this issue. We review de novo whether the bankruptcy court had jurisdiction. Dunmore v. United States, 358 F.3d 1107, 1111 (9th Cir. 2004).

A timely filed notice of appeal divests a bankruptcy court of jurisdiction "over those aspects of the case involved in the appeal." Sherman v. SEC (In re Sherman), 491 F.3d 948, 967 (9th Cir. 2007). See Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) (proper notice of appeal generally "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"). The bankruptcy court retains jurisdiction over all other matters in the case. The only caveat is that the court "'may not alter or expand upon the judgment.'" In re Sherman, 491 F.3d at 967 (citation omitted). "This judge-made principle is designed to promote judicial economy and prevent the confusion that would result from two courts addressing the same issue." Marino v. Classic Auto Refinishing, Inc. (In re Marino), 234 B.R. 767, 769 (9th Cir. BAP 1999).

Debtor contends the bankruptcy court relied upon its previous decision in the LLC Action, where it determined that the assets of the LLC and the Trust should be consolidated with Debtor's assets, to determine in the § 727 action that Debtor failed to keep

-16-

adequate financial records. He argues that because the appropriateness of the bankruptcy court's decision to order substantive consolidation is pending on appeal, the basis for its decision respecting the state of Debtor's financial records in the § 727 action would be uncertain if reversed on appeal. As a result, Debtor contends the bankruptcy court lacked jurisdiction over this issue, which requires our reversal.

Even if we agreed with Debtor, which we do not, the bankruptcy court's findings respecting Debtor's financial records go only to Trustee's claim under § 727(a)(3). Any such reversal would not affect the judgment denying his discharge under § 727(a)(2)(B) or (a)(4)(A) or (a)(6)(A). Further, contrary to Debtor's assertion, the bankruptcy court was free to rely on previous findings of fact it made in the LLC Action for the § 727 action, when the findings made in the latter case in no way altered or expanded on the prior judgment currently on appeal. Accordingly, the bankruptcy court had jurisdiction over the § 727 action.

**B.  Denial of discharge under § 727 generally**

The party objecting to a debtor's discharge under § 727(a) bears the burden of proving by a preponderance of the evidence that the debtor's discharge should be denied. In re Retz, 606 F.3d at 1196. Courts are to "'construe § 727 liberally in favor of debtors and strictly against parties objecting to discharge.'" Id. (quoting Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1281 (9th Cir. 1996)).

////

////

-17-

**1. The bankruptcy court did not err in denying Debtor's discharge under § 727(a)(2)(B).**

Section 727(a)(2)(B) provides that a debtor shall not be granted a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition." Under § 727(a)(2), a party objecting to a debtor's discharge must prove the following elements by a preponderance of the evidence: (1) disposition of property, such as a transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor or the trustee through the act of disposing of or concealing the property. In re Retz, 606 F.3d at 1200. This provision requires actual, not constructive, intent. Devers v. Bank of Sheridan (In re Devers), 759 F.2d 751, 753 (9th Cir. 1985). The intent of a debtor in making a transfer or concealment of property is a question of fact that "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." Id. at 753-54; see also Adeeb v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986). The basis of intent is disjunctive and, thus, a finding of intent to hinder **or** delay **or** defraud is sufficient to deny discharge under § 727(a)(2). In re Retz, 606 F.3d at 1200 (emphasis added).

After a two-day trial, where the bankruptcy court heard testimony from Debtor and received a substantial amount of documentary evidence relating to his original and amended schedules and SOFAs and the pre-existing state court litigation,

-18-

the bankruptcy court determined that Debtor concealed property of the estate with the intent to hinder or defraud creditors and Trustee. Specifically, the bankruptcy court found that Debtor initially failed to disclose, among other assets constituting property of the estate, the one-third property interest, the 2008 Chevy truck, the 2008 Arctic Cat ATV, the mineral rights, and the Lien Claims and counterclaims against creditors. These assets were not disclosed until he filed his amended schedules on August 7 and 8, 2013, nearly 18 months after he filed his chapter 12 bankruptcy case, and only after Trustee had discovered most of the items from independent inquiry. The court found that the very nature and magnitude of the assets belied Debtor's "facile" defense that they were simply overlooked or forgotten. Mem. of Decision (Feb. 12, 2015) at 25.

In determining Debtor's actual intent, the bankruptcy court "carefully evaluated Debtor's testimony," finding that his "credibility was not strong" and that on important questions of nondisclosure of significant assets, his "explanations were not persuasive." Id. Debtor claimed to have poor memory on certain subjects, yet on other occasions, he professed firm recall and specific knowledge. When pressed by Trustee on cross-examination, previous unconditional responses became equivocal. The court further found that Debtor claimed to understand the importance of signing a document under the penalty of perjury, yet failed on "multiple accounts" to include assets on his schedules, knowing that the purpose of the schedules is to provide an accurate list of ownership in property. Id. Debtor's explanations as to why he failed to disclose these assets were "insufficient." Id. at 26.

-19-

That the assets were later disclosed in amended schedules, after Trustee's discovery, "provide[d] no absolute defense." Id.

Debtor disputes generally the bankruptcy court's factual findings, contending that the evidence did not support a claim under § 727(a)(2)(B). Debtor contends that finding he intentionally concealed the Lien Claims and counterclaims asserted in the Lien Litigation was erroneous because creditors were aware of these assets since that litigation was commenced after the petition date; thus, no further notice was necessary. We disagree with Debtor for a few reasons.

Unlike the Lien Litigation, the Lease Litigation was commenced just prior to Debtor's bankruptcy filing. Debtor was aware of any counterclaims (which ultimately became the Lien Claims) he had against Murphy Land at that time regarding his asserted interest in the growing crops. He disclosed the Lease Litigation in his SOFA, but failed to disclose his counterclaims of which he was fully aware on the petition date, particularly since Debtor is legally trained. Further, simply because creditors may be aware of pending litigation claims does not obviate a debtor's duty to disclose those claims on his schedules and SOFA, or to amend those documents as needed for their disclosure. In re Searles, 317 B.R. at 378 (every debtor has a continuing duty to assure the accuracy and completeness of schedules, which implies a duty to amend).

Debtor contends the bankruptcy court completely disregarded his unrefuted reliance upon legal counsel to list these assets. The bankruptcy court did not disregard it; its Memorandum of Decision reflects that the court carefully considered all of the

-20-

evidence. It simply was not persuaded by Debtor's contention, noting that neither attorney Robinson nor his staff were called to testify and finding that "given Debtor's intimate familiarity with (and sole control over) the operations of the LLC and the Trust, and because of his training as a lawyer, and in light of the whole of his testimony, the attempted deflection [that Robinson was to blame for any filing errors] was not persuasive. Mem. of Decision (Feb. 12, 2015) at 6-7 n.14. In any event, the bankruptcy court did accept Debtor's testimony, that he relied on Robinson's advice that selling the 2007 GMC truck and camper was proper, to conclude that Trustee had failed to establish the requisite intent for their transfers postpetition under § 727(a)(2)(B).

Debtor further contends that the finding he intentionally concealed the 2008 Chevy truck, the 2008 Arctic Cat ATV and the one-third property interest was contrary to the evidence. Specifically, Debtor points to the letter sent to Trustee by Mushlitz, his parents' counsel. Debtor contends it was Mushlitz who first made Trustee aware of the existence of these assets and their inadvertent omission in the schedules. The Mushlitz letter states that "You [Trustee] requested information relative to the purchase of [the Elmore property and Debtor's 1/3 interest in it]." This indicates Trustee discovered this omitted asset first. Trustee testified to this fact. Debtor also contends it was not reasonable to speculate he had any motivation to conceal this property interest because he never had any equity in it. It is true that lack of equity can negate a debtor's wrongful intent under § 727(a)(2). Baker v. Mereshian (In re Mereshian), 200 B.R. 342, 346 (9th Cir. BAP 1996). However, the court was not required

-21-

to focus simply on each individual asset and the value thereof, but could consider all of the facts and circumstances to determine Debtor's fraudulent intent under § 727(a)(2)(B). Furthermore, contrary to Debtor's contention, the record indicates the one-third property interest was worth $42,000 with no secured debt against it.

As for the omitted vehicles, the Mushlitz letter is not clear as to who first discovered them, but in addition to Debtor's testimony that he and Mushlitz did, Trustee testified that he did, and that he made demand on Debtor to produce the titles, which Mushlitz enclosed with the responding letter. Ultimately, the bankruptcy court had to choose between the contradictory facts presented. Unfortunately for Debtor, the court did not choose his version of them. We cannot say, on this record, that the court's interpretation of that evidence was not plausible and, thus, clearly erroneous. Anderson, 470 U.S. at 574. This is particularly true given that the findings the court made for Trustee's claim under § 727(a)(2)(B) were partially based on Debtor's credibility. Id. at 576.

Accordingly, we do not discern any clear error with the bankruptcy court's determination that "[b]ased on the existence of pre-petition litigation, the nature of the disclosure in Debtor's initial schedules, Debtor's belated amendments to those schedules to disclose significant assets, and his insufficient explanations regarding the same," Debtor concealed these assets with the intent to hinder or defraud creditors of the estate and Trustee. Mem. of Decision (Feb. 12, 2015) at 26. Thus, the court did not err in denying Debtor's discharge under § 727(a)(2)(B).

-22-

**2. The bankruptcy court did not err in denying Debtor's discharge under § 727(a)(4)(A).**

Section 727(a)(4)(A) states: "The court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999) (citing Aubrey v. Thomas (In re Aubrey), 111 B.R. 268, 274 (9th Cir. BAP 1990)).

To obtain a denial of discharge under § 727(a)(4)(A), the objector must show: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." In re Retz, 606 F.3d at 1197.

**a. False oath**

"A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007); see also In re Wills, 243 B.R. at 62.

The bankruptcy court began by noting that the "concealment" of assets addressed under § 727(a)(2)(B) was largely relevant for this claim as well. The court found the evidence showed that Debtor omitted numerous items from his originally filed bankruptcy schedules — i.e., the Lien Claims; the counterclaims against Murphy Land later asserted in litigation; his interests in various

-23-

business entities; the claims to proceeds from a crop insurance policy; the one-third property interest; the 2008 Chevy truck and the 2008 Arctic Cat ATV; and the mineral rights. While Debtor eventually disclosed some of these items on amended schedules, those disclosures were only made after the omissions were discovered by creditors or Trustee.

The bankruptcy court rejected Debtor's reliance-on-counsel defense as not asserted in good faith. The court reasoned that Robinson had no apparent reason to know about the omission of information; all information originated from Debtor. In addition, Debtor had the opportunity to see how his counsel characterized the disclosed assets and information. He was intimately involved with the farming and the LLC's operations. If Robinson or his staff erred in preparing the documents, Debtor was required to see that those mistakes were corrected before signing and filing. Moreover, Debtor had signed the several declarations, verifying under the penalty of perjury that the statements were true and correct to the best of his knowledge and belief, but "[c]learly they were not true and correct." Mem. of Decision (Feb. 12, 2015) at 28. The court found Debtor's argument that he failed to read the schedules and SOFAs well or thoroughly, or merely forgot or overlooked assets, "lack[ed] credibility and persuasiveness." Id. at 29. As a result, the court found that Debtor's statements, made under oath, omitted assets and therefore constituted a false oath under § 727(a)(4)(A).

Debtor does not appear to contest the bankruptcy court's false oath finding, other than to suggest that his bookkeeper Epis was responsible for providing Debtor's financial information to

-24-

Robinson to complete the original schedules and SOFA and clearly made mistakes in preparing them. While Epis may have assisted Debtor in gathering his financial records for the purpose of filing for bankruptcy, as the bankruptcy court found, Debtor was ultimately responsible for the accuracy of the information presented in his schedules and SOFA, not Epis, Robinson or anyone else.

The evidence in this case established that Debtor made a false oath. Therefore, the bankruptcy court did not clearly err in finding that Debtor made a false oath in his original schedules and SOFA and his amended schedules and SOFA.

**b.    Materiality**

A fact is material "'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" In re Khalil, 379 B.R. at 173 (quoting In re Wills, 243 B.R. at 62); see also In re Retz, 606 F.3d at 1198. An omission or misstatement that "detrimentally affects administration of the estate" is material. In re Wills, 243 B.R. at 63 (citing 6 Lawrence P. King et al., Collier on Bankruptcy ¶ 727.04[1][b] (15th ed. rev. 1998)).

The bankruptcy court found that Debtor's omitted assets were material. Specifically, the court found that several of the assets at issue, when finally disclosed in amended schedules, showed potential value for creditors. The one-third property interest alone was listed on the amended Schedule A as worth $42,000 with no secured debt against it. In addition, the various alleged claims and counterclaims against creditors were relevant

and material to the bankruptcy process and Trustee's investigation and administration independent of Debtor's suggested values.

Certainly, the omitted assets bore a relationship to Debtor's business transactions and estate and concerned the discovery of assets and Debtor's business dealings. The only argument Debtor makes here is that the bankruptcy court failed to address whether the two mineral rights were of material value. Debtor contends these rights have no market value and, thus, were not material assets of the estate. As the bankruptcy court noted, value and equity are not required. The fact that this undisclosed asset may have lacked value, which contradicts the record before the bankruptcy court at the time, is of no consequence for purposes of § 727(a)(4)(A). An omission may be material even if it does not cause direct financial prejudice to creditors. In re Wills, 243 B.R. at 63. And a lack of realizable value for creditors certainly does not negate a debtor's duty of full and candid disclosure of his financial condition. Palmer v. Downey (In re Downey), 242 B.R. 5, 17 (Bankr. D. Idaho 1999). Debtor was obligated to disclose all assets in which he held an interest, valuable or not.

The evidence in this case established that Debtor's false oaths related to material facts. We perceive no clear error with the bankruptcy court's finding of materiality.

### c. Knowingly made and fraudulent intent

A debtor "'acts knowingly if he or she acts deliberately and consciously.'" In re Khalil, 379 B.R. at 173 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 883 (9th Cir. BAP 2005)); see also In re Retz, 606 F.3d at 1198. A debtor acts with

-26-

fraudulent intent when: (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors. Id. at 1198-99. Fraudulent intent is typically proven by circumstantial evidence or by inferences drawn from the debtor's conduct. Id. at 1199. Circumstantial evidence may include showing a reckless indifference or disregard for the truth. In re Wills, 243 B.R. at 64 (intent may be established by a pattern of falsity, debtor's reckless indifference, or disregard of the truth).

The bankruptcy court found that, after carefully considering Debtor's testimony, Debtor knew his omissions were false and that he acted with the intent and purpose of deceiving creditors and Trustee. The court gave "little weight" to Debtor's testimony insofar as he attempted to lay the blame for errors and omissions on his counsel or others. Mem. of Decision (Feb. 12, 2015) at 31. The court further found Debtor's credibility "tainted" not only because some of his testimony was impeached by Trustee, "but by the equivocations and qualifications Debtor attempted to overlay on prior testimony once contrary information was highlighted." Id. The court found that Debtor knew of the assets and failed to disclose them, and in fact "deliberately and consciously" signed multiple sworn schedules without disclosing the assets when he had ample opportunity throughout the chapter 12 process to do so. Id. The court considered, but rejected, Debtor's claim that he was confused or uncertain, or that he simply made mistakes based on lack of care, thought or time. The court was not persuaded by Debtor's "excuses" given the nature of the errors and omissions and their importance to the attempted reorganization. Id.

-27-

Debtor asserts essentially the same contentions on appeal as he did before the bankruptcy court: that he had no intent to hinder, delay or defraud creditors, but only to pay them with crop proceeds; that while mistakes and oversights were made in the schedules and SOFAs, none were made knowingly or with a fraudulent purpose; that Trustee presented no evidence from the chapter 12 trustee Hymas that Debtor committed any malfeasance in connection with his chapter 12 case; that once the omissions in the schedules were realized, Debtor worked diligently with his parent's counsel Mushlitz and his second bankruptcy attorney Gadda to correct any errors; that Debtor's bad intent was negated because he disclosed two real properties he owned free and clear of any debt; that he had forgotten about his interest in the mineral rights because his parents owned the parcels and paid the taxes on them; and that the overall circumstances illustrate that at no point during his bankruptcy case did he ever have the intent to defraud creditors.

It is clear from the record the bankruptcy court considered all of Debtor's testimony regarding his intent, as well as his conduct and the surrounding circumstances. The court simply did not believe Debtor. Even if we were to conclude differently as the finder of fact, we cannot say the court's choice between the two views of the evidence here was clearly erroneous. Anderson, 470 U.S. at 574. This is particularly true because of the great deference we must give the bankruptcy court's findings based on its assessment of Debtor's credibility at trial. In re Retz, 606 F.3d at 1196. At a minimum, the record supports a finding that Debtor's reckless indifference to or disregard for the truth of his schedules and SOFAs provided sufficient circumstantial

-28-

evidence to prove fraudulent intent for purposes of § 727(a)(4)(A). <u>In re Wills</u>, 243 B.R. at 64. Thus, we see no clear error with the bankruptcy court's finding that Debtor's false oath was made knowingly and fraudulently.

The bankruptcy court did not err in finding that Debtor made a false omission in his schedules and SOFAs, that his false omission related to material facts, and that he omitted the information knowingly and fraudulently. Therefore, the bankruptcy court did not err in denying his discharge under § 727(a)(4)(A).

Because we conclude that the bankruptcy court did not err in denying Debtor's discharge under § 727(a)(2)(B) and (a)(4)(A), we need not determine whether it erred in denying his discharge under § 727(a)(3) and (a)(6)(A).

**VI. CONCLUSION**

For the reasons stated above, we AFFIRM.